IN THE UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:21-CV-207

WILMINGTON TRUST, NATIONAL ASSOCIATION, not in its individual capacity, but solely as trustee for MFRA TRUST 2014-2 and FAY SERVICING, LLC,

    Plaintiffs,

v.

NATIONAL GENERAL INSURANCE COMPANY d/b/a NATIONAL GENERAL INSURANCE,

    Defendant.

**BRIEF IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY**

NOW COMES Defendant, National General Insurance Company d/b/a National General Insurance ("National General"), and respectfully submits this brief in support of its Motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), 12(b)(7) and 19 of the Federal Rules of Civil Procedure and the doctrines of forum non conveniens and abstention.

**NATURE OF THE MATTER BEFORE THE COURT**

Essentially the same parties, litigating the same issues, are before the Circuit Court for Fairfax County Virginia in *Integon National Insurance Company v. Singh and Wilmington Trust, National Association*, and assigned case number 2021-00641 (the "Virginia State Court Action"). Wilmington Trust, National Association, not in its individual capacity, but solely as Trustee for MFRA Trust 2014-2 ("Wilmington Trust")

and Fay Servicing, LLC ("Fay Servicing") (collectively "Plaintiffs"), apparently unhappy with having issues of Virginia law decided in the Virginia State Court Action, raced to this court to file essentially duplicative litigation. However, for numerous reasons discussed herein, Plaintiffs action here should either be dismissed or stayed pending the full and final resolution of the Virginia State Court Action.

## FACTUAL AND PROCEDURAL HISTORY

Integon National Insurance Company ("Integon"), a company affiliated with, but distinct from, National General, issued a Virginia Homeowner's Insurance Policy, No. 205979640 (the "Virginia Policy") to Palwinder Singh ("Singh") for property at 817 Walker Road, Great Falls, Virginia, 22066 (the "Virginia Property") on or about January 3, 2018. *See* Virginia Policy at p. 1 & 4, attached as exhibit A to the Amended Complaint in the Virginia State Court Action; Amended Complaint in Virginia State Court Action at ¶ 1 attached hereto as Exhibit "A;" Affidavit of Jeffrey Weissmann at ¶¶ 3 & 5-6 ("Weissmann Aff."), attached hereto as Exhibit "B" and Doc. 1 at ¶ 12.[1] The Virginia Policy was renewed in January 2019 and January 2020 for additional one year terms. *See* Amended Complaint in Virginia State Court Action at ¶ 1. National General did not issue or renew the Virginia Policy. *See* Virginia Policy at p. 1 & 4; Weissmann Aff. at ¶ 5.

Singh originally had a mortgage on the Property with Bank of America, N.A. ("Bank of America"). *See* Amended Complaint in Virginia State Court Action at ¶ 3 and

---

[1] While Plaintiffs alleged National General issued the Virginia Policy for the reasons discussed herein and as evidenced by the Virginia Policy and the affidavit of Jeffrey Weissmann, Plaintiffs are simply incorrect.

2

Doc. 1 at ¶¶ 6-7. Unbeknownst to Integon, on or about October 17, 2017, the mortgage was assigned from Bank of America to Wilmington Trust. *See* Amended Complaint in Virginia State Court Action at ¶ 3 and Doc. 1 at ¶ 9. Fay Servicing serviced the mortgage for both Bank of America and Wilmington Trust. *See* Amended Complaint in Virginia State Court Action at ¶ 3-4 and Doc. 1 at ¶ 10.

On or about May 12, 2020, the Virginia Property was damaged by fire and an insurance claim was made under the Virginia Policy. *See* Amended Complaint in Virginia State Court Action at ¶ 13 and Doc. 1 at ¶ 16. During the investigation of the insurance claim, Integon learned that in Singh's application for insurance with Integon, he made various material misrepresentations related to his history with insurance and bankruptcy and Integon voided the Virginia Policy *ab initio* and denied all claims on the Virginia Policy. *See* Amended Complaint in Virginia State Court Action at ¶¶ 7-8, 14-17 and Doc. 1 at ¶ 20. Thus, on January 12, 2021, Integon filed a declaratory judgment claim in the Virginia State Court Action to rescind the Virginia Policy. *See* Complaint in Virginia State Court Action at ¶¶ 23-26, attached hereto as Exhibit "C."

Also contained in the original complaint in the Virginia State Court Action was a claim for declaratory judgment against Bank of America that the Virginia Policy mortgage clause did not apply, as Bank of America knew, through Fay Servicing, that the Virginia Property had a change of ownership that was not disclosed to Integon. *See* Complaint in Virginia State Court Action at ¶¶ 27-31.

After the Virginia State Court Action was filed, Integon was informed that the mortgage on the Virginia Property had been assigned from Bank of America to

3

Wilmington Trust. Thus, it was Wilmington Trust who had the claim for coverage as the mortgagee. *See* Amended Complaint in Virginia State Court Action at ¶ 29 and Doc. 1 at ¶ 18. However, because Wilmington Trust equally failed to notify Integon of a change in ownership of the Virginia Property, of which it was aware, Integon is not obligated to compensate Wilmington Trust under the Virginia Policy. *See* Amended Complaint in Virginia State Court Action at ¶ 11-12, 28-30.

Upon learning that the mortgage had been assigned to Wilmington Trust, counsel for Integon corresponded with counsel for Plaintiffs. *See* Email correspondence, attached as Exhibit "D." Counsel for Integon noted that if Wilmington Trust maintained a claim for insurance proceeds despite overwhelming evidence that it was not entitled to any such proceeds, the parties should proceed with filing documents in the Virginia State Court Action to allow a substitution of Wilmington Trust for Bank of America. *See id*. Rather than timely respond, counsel for Plaintiffs delayed several weeks and filed the instant action in this Court. *See id.*

Shortly thereafter, Integon moved to amend the Virginia State Court Action to substitute Wilmington Trust for Bank of America. *See* Motion to Amend in Virginia State Court Action, attached as Exhibit "E." On March 24, 2021, an order was entered granting the motion to amend the complaint and Bank of America was dismissed and Wilmington Trust was added as a party defendant. *See* Order in Virginia State Court Action, attached hereto as Exhibit "F." Thus the defendants in the Virginia State Court Action by Integon are currently Singh and Wilmington Trust. *See* Amended Complaint in Virginia State Court Action.

4

## QUESTIONS PRESENTED

1. Does this lawsuit need to be dismissed under Rule 12(b)(6) for failure to name the proper insurer?

2. Does this lawsuit need to be dismissed under Rules 12(b)(2), 12(b)(7) and 19 for failure to join a necessary party?

3. Does this lawsuit need to be dismissed under Rule 12(b)(3) or the doctrine of forum non conveniens?

4. Does this lawsuit need to be dismissed under Rule 12(b)(1) or the doctrine of abstention?

5. Does this lawsuit need to be stayed under the doctrine of abstention?

## LEGAL ARGUMENT

Integon initiated its claims for declaratory judgment in the Virginia State Court Action to determine whether the Virginia Policy could be rescinded given Singh's material misrepresentations in his application for the Virginia Policy and whether the mortgagee was entitled to insurance proceeds on the Virginia Policy, given that it failed to alert Integon to a change in ownership of the Virginia Property. Rather than litigate those issues in the existing Virginia State Court Action, Plaintiffs raced to North Carolina to file this federal lawsuit to address the same issues. However, because Plaintiffs named the incorrect insurer, failed to add a necessary party, are utilizing an improper or inconvenient venue, and the doctrine of abstention applies, the Court should dismiss this action or stay it pending the full and final resolution of the Virginia State Court Action.

5

Case 1:21-cv-00207-TDS-JEP   Document 7   Filed 04/06/21   Page 5 of 18

### A. Plaintiffs Sued the Wrong Insurer.

Plaintiffs fail to state a claim upon which relief can be granted against National General as Integon, and not National General, issued and renewed the Virginia Policy. *See* Virginia Policy at p. 1 & 4; Weissmann Aff. at ¶ 5. Thus, as all of Plaintiffs' claims in the lawsuit are based on the premise that National General issued the Policy to Singh, the claims must be dismissed. *See* Doc. 1 at ¶¶ 12-13, 20-22, 24-27, 29, 31-39, 41-44.

Therefore, Integon, and not National General, was the insurer and is the proper party to a lawsuit about the Virginia Policy. Accordingly, Plaintiff's claims must be dismissed under Rule 12(b)(6) for failure to state a claim against National General.

### B. Plaintiffs Failed to Add a Necessary Party.

Even if Plaintiffs had sued the correct party, their claims would have to be dismissed for failure to add a necessary party, Singh. Rule 12(b)(7) allows for the dismissal of claims if the Plaintiffs failed to join a party under Rule 19. *See* Fed. R. Civ. Proc. 12(b)(7).

> Rule 19 sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action. First, the district court must determine whether the party is 'necessary' to the action under Rule 19(a). If the court determines that the party is 'necessary' it must then determine whether the party is 'indispensable' to the action under Rule 19(b).

*National Union Fire Ins. Co. v. Rite ex rel. S.C.*, 210 F.3d 246, 249 (4th Cir. 2000) *citing Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917-918 (4th Cir. 1999).

6

The named insured is a necessary party in an action based on that insurance policy. *See id* at 251. Here, a determination of Integon's liability to Plaintiffs necessarily requires that threshold issue of whether Integon appropriately denied the insurance claim for material misrepresentations in the application. If the denial was unwarranted, Singh may be entitled to insurance proceeds. If he is not a party to this action, such a decision will be made without his involvement.

Moreover, Integon has a "substantial risk of incurring" conflicting legal obligations as the Virginia State Court Action could reach determinations concerning Singh's material misrepresentations and/or Plaintiffs' rights under the applicable mortgage clause of the Virginia Policy and this Court could reach different conclusions. Such a risk "weighs heavily in favor of finding" that Singh is a necessary party. *See id* at 252 *citing Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999); *Keal*, 173 F.3d at 918-919; *Schlumberger Indus. v. National Sur. Corp.* 36 F.3d 1274, 1286-1287 (4th Cir. 1994).

As Singh is a necessary party to the litigation, the next question is whether Singh is an "indispensable" party under Rule 19(b). *See id*. The Fourth Circuit has held that "precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Id. quoting Travelers Indem. Co. v. Household Int'l Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991). The Rule 19(b) factors include to "what extent a judgment rendered in the non-party's absence will prejudice that person or those already parties." *Id*. As discussed above, the absence of Singh may be prejudicial both to him and the current parties as it runs the risk of conflicting decisions and requires duplicative

7

litigation. Such a factor weighs strongly in favor of indispensability when the missing party "entered into the policy, and [the] suit concerns [his] conduct." *Id* at 252-253.

The second factor under Rule 19(b) is "whether the court can tailor relief to lessen or avoid the prejudice to the absent person or to those already parties." *Id.* at 253. Like in *National Union*, it is inconceivable how this court could reach a decision on the propriety of Integon's denial of the insurance claim and the application of the mortgage clause, which is also at issue in the Virginia State Court Action, while lessening or avoiding prejudice to Singh or the parties in this action. This court would be called upon to decide the exact same legal issues as would be decided in the Virginia State Court Action.

The third factor is "whether a judgment without the absent person will be adequate." *Id*. As the Fourth Circuit noted in *National Union* resolving the entire controversy in one action avoids piecemeal and inefficient litigation. Thus, a decision without Singh, when he is a party in the Virginia State Court Action, would not be adequate. Moreover, parallel actions involving essentially the same parties litigating essentially the same legal issues is the very definition of inefficient.

The final factor is whether the "nonjoinder will leave the plaintiff with an adequate remedy." *Id.* Here, like in *National Union*, Plaintiffs will have an adequate remedy by participating in the Virginia State Court Action. In fact, such an action is preferable given that the both actions involve the interpretation of Virginia law to a Virginia Policy about a Virginia Property purchased by a Virginia resident. *See Metropolitan Life Ins. Co. v. Henkel*, 234 F.2d 69, 70 (4th Cir. 1956) *citing Horton v.*

*Home Ins. Co.*, 122 N.C. 498 (1898) (insurance policies are governed by the law of the state "in which the policy was applied for and delivered"). The only connection to North Carolina appears to be Plaintiffs' allegation that it is the principal place of business of the entity that Plaintiffs incorrectly assert issued the Virginia Policy.

Accordingly, Singh is a necessary and indispensable party and the failure to join him means this action should be dismissed pursuant to Rules 12(b)(2) and 12(b)(7).[2]

### C. Venue in the Middle District of North Carolina is Improper.

Plaintiffs allege venue is proper in this Court under 28 U.S.C. § 1391. *See* Doc. 1 at ¶ 5. Under 28 U.S.C. § 1391, venue is appropriate either in the judicial district in which any defendant resides, if all defendants are residents of that state or a judicial district in which a substantial part of the events giving rise to the claim occurred. *See* 28 U.S.C. § 1391(b).

Here the only apparent connection to the Middle District of North Carolina is the allegation that National General's principle place of business is in this judicial district. *See* Doc. 1 at ¶ 5. However, as noted, National General is not the proper party to this lawsuit. Thus, with no other basis for the Middle District of North Carolina being the proper venue, dismissal under Rule 12(b)(3) is appropriate.

Moreover, even if the Middle District of North Carolina was an appropriate venue for the insurer, the addition of Singh as a necessary and indispensable party, as discussed above, would render venue in the Middle District of North Carolina inappropriate as he is

---

[2] While it is not alleged the addition of Singh destroys diversity jurisdiction, it would render venue inappropriate as there is no indication that the Middle District of North Carolina has personal jurisdiction over Singh. *See* Fed. R. Civ. Proc. 12(b)(2).

9

a resident of Virginia and not North Carolina.  *See* Amended Complaint in Virginia State Court Action at ¶ 2.

Finally, even if the Middle District of North Carolina was an acceptable venue, this lawsuit should be dismissed for forum non conveniens.  "A federal court may dismiss a case on the ground of forum non conveniens 'when an alternative forum has jurisdiction to hear [the] case, and…trial in the chosen forum would establish…oppressiveness and vexation to a defendant…out of all proportion to plaintiff's convenience, or…the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'"  *SAS Inst., Inc. v. World Programming, Ltd.*, 2012 U.S. App. LEXIS 3247 (4th Cir. 2012) (unpublished) *quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007).

The first element is whether an alternative forum exists.  *See Jiali Tang v. Symutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011).  Here, there should be no question that an alternative forum exists.  The Virginia State Court Action, which was filed first, is addressing, and certainly can address, any and all allegations as to the application of Virginia law to the Virginia Policy issued to a Virginia resident.

Moreover, the Eastern District of Virginia would be a proper venue to hear a dispute about an insurance policy issued in that district and concerning property and a resident located in that district.  *See* 28 U.S.C. § 1391(b)(2).  There is no question the Eastern District of Virginia would have personal jurisdiction over the insurer that issued a policy covering property in that district, the named insured who lived in that district and

owned property in that district, and the mortgagee and servicer of the mortgage on property located in that district.

The second element is that the balance of private and public interest favors dismissal. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). Here, dismissal is warranted. Public interest certainly favors dismissal. It is in the public's interest for a Virginia based Court to interpret Virginia law as applied to a Virginia Policy issued to a Virginia resident. The Virginia Property and the documents establishing the mortgage are in Virginia. The only connection to this judicial district is an allegation that the incorrect insurer's principal place of business is here. Doc. 1 at ¶ 5.

Additionally, private interests favor dismissal. The Virginia State Court Action was filed first and addresses the very same issues alleged in Plaintiffs' lawsuit. Moreover, this lawsuit reeks of forum shopping as Plaintiffs' counsel was asked about substituting Wilmington Trust as a defendant in the Virginia State Court Action after it was disclosed that the mortgage had been transferred to Wilmington Trust, and, rather than timely respond, Plaintiffs figuratively ran to the this courthouse to file the instant action. Further, Plaintiffs are not residents in this judicial forum and dismissal from this forum is no less convenient than being involved in litigation in Virginia. Finally, the risk of inconsistent verdicts, the likelihood of duplicative litigation, and the absence of all relevant parties, point to dismissal under forum non conveniens.

Therefore, Plaintiff's claims must be dismissed under Rule 12(b)(3) for improper venue and/or the doctrine of forum non conveniens.

### D. The Lack of Subject Matter Jurisdiction and the Doctrine of Abstention Require Dismissal of this Lawsuit.

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983). This extraordinary and narrow exception is necessary in this case.

Abstention is analyzed under the Colorado River doctrine. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

> The threshold question in deciding whether Colorado River abstention is appropriate is whether there are parallel federal and state suits. If parallel suits exist, then a district court must carefully balance several factors, with the balance heavily weighted in favor of the exercise of jurisdiction. Although the prescribed analysis is not a 'hard-and-fast' one in which application of a 'checklist' dictates the outcome, six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decisions on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463-464 (4th Cir. 2005).

#### 1. There are parallel suits.

"Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine*

12

*Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). Here, the issues in the Virginia State Court Action and this action are the same. Namely, both actions will determine whether Integon appropriately denied the claims on the Virginia Policy. Further, here, the claims are between substantially the same parties, being the insurer and the mortgagee.

### 2. The factors dictate abstention.

The first factor does not appear to be relevant to either the Virginia State Court Action or this action as *in rem* jurisdiction is not at issue. However, it should be noted that the Virginia Property on which the Virginia Policy was issued and about which the insurance claims were made is located in the forum of the Virginia State Court Action and not in this judicial district.

As discussed above, this federal forum is inconvenient as only one of the parties, a party that is not the correct party, is located in this judicial district. Moreover, this forum is inconvenient as the Court is being asked to render decisions of Virginia law on a Virginia Policy issued to a Virginia resident. Thus, the second factor strongly favors abstention.

As noted earlier, without abstention by this Court, there will be piecemeal litigation. The Virginia State Court Action is proceeding against substantially the same parties on the substantially the same issues. The risk of inconsistent verdicts and duplicative litigation are very real possibilities if both cases proceed. Thus, this third factor strongly favors abstention.

13

The Virginia State Court Action was filed first. It should be of no importance that it was filed against the original mortgagee before being amended to add Wilmington Trust once Integon learned of the assignment as such claims relate back to the date of the original filing. *See* Va. Code Ann. § 8.01-6. Moreover, any attempt to argue that this factor weighs against abstention is an argument to reward forum shopping and a figurative race to the courthouse. Thus, the fourth factor strongly favors abstention.

There are no federal questions presented in either the Virginia State Court Action or this action. All the claims are based in state law allegations of contract interpretation, whether a claim of declaratory judgment or breach of contract, or claims of negligence and negligent misrepresentation. Further, every claim in both actions asks the same fundamental question as to whether, under Virginia law, Integon could deny the claims for insurance proceeds under the Virginia Policy. Thus, this fifth factor strongly favors abstention.

There is no question that courts in Virginia can adequately protect the interests of all parties' rights. In fact, having a Court located in Virginia applying Virginia law to a Virginia Policy issued to a Virginia resident is greater protection to all parties than having a federal court located outside of Virginia doing the same thing. Thus, the sixth factor strongly favors abstention.

Accordingly, this Court, pursuant to Rule 12(b)(1) and applying the doctrine of abstention, should dismiss this action in favor of the Virginia State Court Action. Alternatively, the abstention doctrine contemplates a stay of this action pending resolution of the Virginia State Court Action. However, while a stay under the abstention

doctrine as laid out in *Colorado River* would be appropriate, National General contends the proper analysis of the motion to stay is under the Landis Doctrine. *See Landis v. North American Co.*, 299 U.S. 248 (1936).

### E. Alternatively, the Court Should Stay this Action Pending the Resolution of the Virginia State Court Action.

In the event the Court declines to dismiss this action, National General requests that this Court stay this action pending the resolution of the Virginia State Court Action. "[P]roper use of [the Landis Doctrine] calls for the exercise of judgment which must weight competing interests and maintain an even balance. The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative. The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Willford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). "The grant or denial of a request to stay proceedings calls for an exercise of the district court's judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013). This Court has examined three factors under the Landis Doctrine to determine if a stay is appropriate. They are (1) "the interests of judicial economy;" (2) "the hardship and inequity to the moving party in the absence of a stay;" and (3) "the potential prejudice to the non-moving party in the event of a stay." *Yadkin Riverkeeper,*

15

*Inc. v. Duke Energy Carolinas, LLC*, 141 F.Supp. 3d 428, 452 (M.D.N.C. 2015). Here, all three factors point to a stay of this action.

The interests of judicial economy are better served by allowing the Virginia State Court Action to reach a resolution on questions of Virginia law as applied to a Virginia Policy issued to a Virginia resident. Further, the concerns of inconsistent verdicts and waste of judicial resources discussed herein are better served by allowing the Virginia State Court Action to proceed in lieu of this action.

The hardship and inequities to National General or, more accurately, Integon, in the absence of a stay include the necessity of participating in substantially the same litigation in two different forums, including duplication of discovery and concerns of inconsistent verdicts.

Finally, the potential prejudice to Plaintiffs is virtually non-existent. Plaintiffs have no connections to this judicial district. *See* Doc. 1 at ¶¶ 1-2. Plaintiffs will have every right to present their claims and defenses in the Virginia State Court Action. Moreover, Plaintiffs, through an assignment, held a mortgage on a Virginia Property owned by a Virginia resident and which was protected by a Virginia Policy. Thus, Plaintiffs had every expectation that a dispute, such as presented here, would be litigated in Virginia. Plaintiffs cannot be heard to now complain of prejudice in not getting to litigate these issues in North Carolina.

Put simply, if dismissal of this action is not appropriate for any of the myriad of reasons expressed above, this Court should stay this action pending the full and complete

resolution of the Virginia State Court Action. Then, if there are any issues left, which is extremely unlikely, they can be litigated here.

## **CONCLUSION**

For the reasons stated above, National General respectfully requests that the Court dismiss Plaintiffs' claims without prejudice. Alternatively, National General respectfully requests that the Court stay this litigation until the Virginia State Court Action is fully and completely determined.

This the 6thday of April, 2021.

/s/ Jeffrey B. Kuykendal_____
John T. Jeffries (Bar No: 21344)
Jeffrey B. Kuykendal (Bar No: 37693)
Attorneys for Defendants
McAngus Goudelock & Courie, PLLC
Post Office Box 30307
Charlotte, North Carolina 28230
(704) 643-6303
jjeffries@mgclaw.com
jeffrey.kuykendal@mgclaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the date above I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Donald R. Pocock
> Nelson Mullins Riley & Scarborough, LLP
> 380 Knollwood Street, Suite 530
> Winston-Salem, North Carolina 27103
> Attorney for Plaintiffs

/s/ Jeffrey B. Kuykendal
John T. Jeffries
Jeffrey B. Kuykendal

**CERTIFICATE OF WORD COUNT**

I hereby certify that this document contains no more than 4,447 words.

/s/ Jeffrey B. Kuykendal
John T. Jeffries
Jeffrey B. Kuykendal
