IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:21-cv-207-TDS-JEP

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2014-2 and FAY SERVICING, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL GENERAL INSURANCE COMPANY D/B/A NATIONAL GENERAL INSURANCE,<br><br>Defendant. | **RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TO STAY** |

NOW COME Plaintiffs Wilmington Trust, National Association, not in its individual capacity but solely as Trustee for MFRA Trust 2014-2 ("the Trust") and Fay Servicing, LLC ("Fay") pursuant to Local Rule 7.3(f) and respond to the Motion to Dismiss, or Alternatively, to Stay (Doc. 7) filed by Defendant National General Insurance Company ("National General"):

**PROCEDURAL POSTURE**

The Trust and Fay commenced this action on March 15, 2021 asserting three claims for relief: (1) breach of contract, (2) negligence, and (3) negligent misrepresentation arising from the denial of a property insurance claim. (Complaint, Doc. 1.) Defendant appeared on April 6 and moved to dismiss this action or alternatively to stay it pending the outcome of a suit pending in the Circuit Court for Fairfax County, Virginia bearing file number 2021-00641 ("the Virginia Action"). No answer to the Complaint in this action has been filed.

4831-3025-3542 v.1 038779/02264

The Virginia Action was commenced on or about January 12, 2021 by Integon National Insurance Company ("Integon") against Bank of America, N.A. (Motion to Dismiss, Ex. C, Doc. 7-3.) Neither the Trust nor Fay were named in the action. On or about March 24, Integon filed an amended complaint that named only the Trust as a defendant. (*Id.*, Ex. A., Doc. 7-1.) Fay is not named as a party in the Virginia Action.

## FACTUAL BACKGROUND

This suit arises from the cancellation of a policy of property insurance following a fire that occurred on May 12, 2020. The destroyed property is located at 817 Walker Road, Great Falls, VA ("the Property"). (Doc. 1 at ¶ 2.) Fay services a mortgage that is secured by the Property on behalf of the Trust.[1] (*Id.* at ¶ 6, 7, 12.) The mortgage debt is owed by Palwinder Singh ("Singh"). (*Id.* at ¶ 1.) The debt was originally incurred on or about March 18, 2008 by means of a promissory note originally payable to Bank of America, N.A. ("the Note"). As security for the repayment of the Note, Singh conveyed a deed of trust of the Property, which deed of trust was recorded in Deed Book 19848 at Page 228 of the land records of the Circuit Court of Fairfax County, Virginia ("the Deed of Trust").

The Deed of Trust required Singh to obtain property insurance coverage to protect the lender. Specifically, Section 5 of the Deed of Trust obligated Singh to obtain and maintain insurance on the Property "against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods…" Further, Section 5 of the Deed of Trust required that all policies and renewals of such policies "shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss

---

[1] Contrary to the Defendant's Brief, Fay did not service the mortgage for Bank of America, N.A. before the loan was transferred to the Trust. (*See* Brief in Support of Motion to Dismiss at 5.) Bank of America serviced the loan itself. Servicing transferred to Fay about the same time the loan was transferred to the Trust.

payee." (*Id.* at ¶ 8.) The purpose of such insurance was to protect the lender for the unpaid balance of the mortgage debt should the collateral be destroyed, which is what happened to the Property.

On or about October 17, 2017 the mortgage was assigned to the Trust and an Assignment of Deed of Trust evidencing that transfer was recorded in Book 25259 at Page 1417 of the land records of the Circuit Court of Fairfax County, Virginia. (Mot. to Dism., Ex. A, Doc. 7-1 at 100.) Subsequent to that transfer, on or about January 3, 2018 Singh obtained a policy of insurance from "National General Insurance." (Compl. at ¶ 12.) Neither Fay nor the Trust participated in procuring the policy, were provided a copy of the application for the policy, or knew what information Singh gave or failed to give when applying for the policy. (*Id.* at ¶ 28.) Neither Fay nor the Trust were ever provided a full copy of the policy (*id.* at ¶ 24), but Fay was led to believe that it was named as an additional insured under a policy bearing number 2005979640 based on written communications received from National General (*id.* at ¶ 25). These communications included the payment of a claim arising from tree damage that occurred in July 2018.

Fay managed an escrow account in connection with Singh's mortgage and paid premiums for the Policy through the escrow. (*Id.* at ¶ 14.) Fay insured that all premiums due were timely paid. (*Id.* at ¶ 15.) There was no lapse in coverage due to any nonpayment of premium from the time the policy was issued in 2018 until the fire that occurred in May 2020.

Fay submitted a claim to National General in connection with the fire, which was assigned claim number 200174693. (*Id.* at ¶ 18.) From June until December 2020 Fay communicated regularly with National General about the claim. True and accurate copies of these communications are attached hereto as Exhibit A.[2] These communications were by email to

---

[2] These communications can be considered by the Court without converting the Motion to Dismiss into a Motion for Summary Judgment since the Defendant is challenging subject matter jurisdiction through a motion to dismiss under Rule 12(b)(1). *See Velasco v. Gov't Of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("Generally, when a defendant challenges subject matter jurisdiction via a Rule 12(b)(1) motion to dismiss, the district court may regard the pleadings

3

employees located in Winston-Salem, NC, identified as working for National General Insurance, and all using the same email domain of "ngic.com." During this time, National General made unusual requests for information about the borrower including requesting the borrower's payment history and foreclosure information. (*Id.* at ¶ 19.)

After considering the claim submitted by Fay *for more than six months*, National General suddenly, and without warning, unilaterally cancelled the policy retroactive to January 2019. (*Id.* at ¶ 20.) The asserted grounds for the cancellation of the policy were misrepresentations made by Singh in his application. (*Id.* at ¶ 27.) On January 11 and 14, 2021 Fay asked National General to reconsider Fay's claim as neither Fay nor the Trust had knowledge of any statements made by Singh in his application and Fay had faithfully paid premiums to National General. (*Id.* at ¶ 35.) True and accurate copies of these communications are attached hereto as Exhibit B.

Integon commenced the Virginia action on January 21, 2021 without naming Fay or the Trust but naming Bank of America instead. Noting that the Virginia Action named the wrong lender and under the belief, based upon communications received from National General, that the Virginia Action also named the wrong insurance carrier, the Trust and Fay commenced this action seeking to recover damages for the denial of their claim on March 15, 2021.

## ARGUMENT

### I. National General's use of the trade name "National General Insurance" by multiple affiliated companies should not result in a dismissal of this action.

The Defendant has made the strategic choice to use an identical trade name for multiple, separate insurance corporations in an effort to confuse and obfuscate the way in which it operates its network of corporate entities. The Complaint was prepared based on communications received

---

as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.")

4

from National General Insurance under the belief that "National General Insurance" was the name of the carrier involved. As noted in the Complaint, neither the Trust nor Fay were ever provided a copy of the policy obtained by Singh. As such, they cannot even verify that the copy of the policy attached to the Defendant's motion to dismiss is or is not the actual policy. At this stage, however, the question before the Court is whether the Complaint, as drafted, states a claim for relief against the defendant named herein.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atlantic Corp.*, 550 U.S. at 556). A pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555. The court is not bound by a plaintiff's unsupported legal conclusions, because "the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).

Taking the allegations of the Complaint as true, the Complaint states a claim for relief. It alleges that National General issued the policy. (Compl. at ¶ 12.) It alleges that National General refused to pay the claim submitted by Fay on behalf of the Trust. (*Id.* at ¶ 20.) It alleges that National General failed to reasonably investigate the claim and in doing so violated its duty of care owed to Fay and to the Trust. (*Id.* at 26-37.) Finally, it alleges that Fay relied upon information provided by National General by paying for the policy, but that National General rescinded the policy based upon alleged misrepresentations made by Singh even though neither Fay nor the Trust

participated in any of the conduct that provided the asserted grounds for cancellation of the policy. (*Id.* at 41-44.) These allegations state claims for relief.

National General admits that the name "National General Insurance" is used by multiple corporations under the same umbrella. (Aff. of J. Weissmann, Doc. 7-2.) In Virginia, as in North Carolina and many other states, any corporation conducting business under an assumed name has a duty to disclose the use of the assumed name. Va. Code Ann. § 59.1-69(B) (West) ("No person shall conduct or transact business in the Commonwealth under any assumed or fictitious name unless such person files in the office of the clerk of the Commission a certificate of assumed or fictitious name.") Assumed name certificates are required to be filed with the Virginia State Corporation Commission. *Id.* Information about assumed names is publicly available online. Virginia – SCC, https://cis.scc.virginia.gov/ (Accessed April 23, 2021). The only alternate name for Integon National Insurance Company ("Integon") is "Bankers and Shippers Insurance Company" which was discontinued in 1996. A true and accurate reproduction of this information available obtained through the Virginia SCC website is attached hereto as Exhibit C. Meanwhile, a search for "National General Insurance" reveals the defendant named herein as a registered corporation. A true and accurate reproduction of this information available through the Virginia SCC website is attached hereto as Exhibit D. Note that both Integon and National General have the same principal office address located in Winston-Salem, NC.

Further in Virginia, as in North Carolina and most other states, insurance carriers are regulated by a state bureau of insurance, and insurance company information can be searched online. Virginia State Corporation Commission, https://scc.virginia.gov/boi/ConsumerInquiry/ (Accessed April 23, 2021). Both the defendant named herein and Integon are registered with the bureau of insurance, have the same mailing address, phone number, and website address. A true

6

4831-3025-3542 v.1 038779/02264

Case 1:21-cv-00207-TDS-JEP    Document 8    Filed 04/27/21    Page 6 of 16

and accurate reproduction of this information available through the Bureau of Insurance website is attached hereto as Exhibit E. The potential for confusion between these two carriers is obvious, and Integon's failure to disclose the use of a trade name that is confusingly similar to an affiliate should not merit dismissal at this early stage. The Complaint, taken in the light most favorable to the Plaintiffs, adequately states a claim for relief and should not be dismissed pursuant to Rule 12(b)(6).

## II. Singh is not a necessary party to this action.

The mortgagee clause contained in the policy at issue created a separate and independent contract with the lender, thus Singh's presence is not required to resolve the claim made by Fay. The mortgagee clause provides that if a loss is payable, the carrier will pay the loss to the mortgagee and the named insured "as their interests appear." (Mot. to Dismiss, Ex. A, Doc. 7-1 at 34.) Following this agreement to pay the mortgagee is a paragraph that provides that if a claim by the insured is denied that denial shall not apply to a valid claim of the mortgagee. (*Id.*) Further, the policy provides that if the policy is cancelled, notice must be given directly to the mortgagee ten days before the cancellation takes effect. (*Id.*) Finally, if the policy is not renewed, the carrier must provide notice directly to the lender of nonrenewal at least thirty days before the policy expires. (*Id.* at 36.)[3] Also, any claim paid to the lender is limited to the amount of the outstanding debt. (*Id.* at 34, 36.)

Where a policy extends coverage to a mortgagee that cannot be invalidated by an act of the mortgagor, the policy creates a "separate and independent insurance of the mortgagee's interest." *New Brunswick Fire Ins. Co. of New Brunswick, N.J., v. Morris Plan Bank of Portsmouth, Va.*, 136 Va. 402, 408, 118 S.E. 236, 238 (1923). It is possible, under the mortgagee clause of this

---

[3] Note that the pages of the policy are out of order in Exhibit A. Page 34 of Exhibit A is page 13 of 21 of the policy. Page 14 of the policy is located on Page 36 of Exhibit A and Page 15 of the policy is located on Page 35.

policy, for a claim to be denied as to the insured but not as to the mortgagee. Further, the policy requires different notice periods in the event of a cancellation. *Compare* Doc. 7-1 at 36 (10 day notice to mortgagee) *with* Doc. 7-1 at 42 (30 day notice to mortgagor).

Rule 19 is triggered when a lawsuit is proceeding without particular parties whose interests are central to the litigation. *See* Fed. R. Civ. P. 19(a). Rule 19(a) requires joinder when:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

*Id.* That rule "sets forth a two-step inquiry, examining: (1) whether the party is "necessary" to the action under Rule 19(a); and (2) whether the party is "indispensable" under Rule 19(b)." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000)).

Here, Fay submitted a claim directly to National General. Fay's claim does not extend to any of Singh's personal property that may have been impacted by the fire or to Singh's equity in the Property. Under the terms of the policy, Singh has no right to any insurance proceeds up to the amount of the mortgage debt. Accordingly, Fay's claim can be resolved without Singh's presence in this action. *See Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (holding that a party is necessary under Rule 19(a)(1) if either (A) "the court cannot accord complete relief among existing parties"; or (B) the non-joined party "claims an interest relating to

the subject matter of the action," and its absence would either (i) conflict with its "ability to protect the interest" or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest"). Thus, Singh is not a necessary party, and Plaintiff's motion to dismiss should be denied.

### III. Venue is proper in this court.

Venue of actions in federal court is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). There is no dispute that National General's headquarters are located in Winston-Salem, NC. The same is true for Integon. All of the employees that communicated with Fay regarding the claim it submitted were located in Winston-Salem. National General's records related to Fay's claim are most likely located here in North Carolina. Accordingly, venue is proper.

National General alternatively seeks to have this action dismissed under the doctrine of *forum non conveniens*. "The doctrine of forum non conveniens provides the district court with the discretion to dismiss a case where it finds that when weighed against [the] plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *S & D Coffee, Inc. v. GEI Autowrappers*, 995 F. Supp. 607, 610 (M.D.N.C. 1997) (citing *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984)). Dismissal of an action on the grounds of *forum non conveniens* is "rarely appropriate." *The In Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 505 (M.D.N.C. 1987). This is because the Supreme Court has held that "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).

It is difficult to conceive how it would be overly burdensome on National General to defend this action in the district where its headquarters are located. The presence of witnesses and evidence located here in North Carolina weighs in favor of the action continuing in this venue. Employees of National General who communicated directly with Fay could not be compelled to testify in Virginia by means of a Virginia state court subpoena, but they could be compelled to testify in the Middle District of North Carolina. Meanwhile, both Fay and the Trust are located outside of both Virginia and North Carolina. Accordingly, the court should not dismiss this action under the doctrine of *forum non conveniens*.

### IV. Abstention is not necessary.

Abstention is an extremely limited doctrine which should not be applied to this case. As the Supreme Court has noted, it is not a doctrine of equity to be invoked merely because a state court could possibly entertain an action. *Alabama Pub. Serv. Comm'n v. S. Ry. Co.*, 341 U.S. 341, 361, 71 S. Ct. 762, 774, 95 L. Ed. 1002, 1015 (1951) (Frankfurter, J., concurring in result) (quoted by *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976)). *Colorado River* held that there are three scenarios where abstention has historically been appropriate: (1) cases that present a federal constitutional issue that could be mooted by determination of a state question of law ("*Pullman* abstention"); (2) cases that present difficult issues of state law ("*Burford* abstention"); and (3) cases that seek to nullify a state criminal proceeding ("*Younger* abstention"). *Colorado River Water Conservation Dist.*, 424 U.S. at 814–816. *See also R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 61 S. Ct. 643, 85 L. Ed. 971 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943); *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971). None of these scenarios are applicable here, particularly *Younger* abstention as there is no criminal prosecution involved.

The *Burford* abstention doctrine was developed by the United States Supreme Court, "to enable federal courts to avoid needless conflict with the administration by a state of its own affairs." *Meredith v. Talbot Cty., Md.*, 828 F.2d 228, 231 (4th Cir. 1987). *See also Alabama Public Service Commission*, 341 U.S. 341.

> The Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems. Principles of federalism and comity require no less…[Abstention] safeguards our federal system from the delay, misunderstanding of local law, and needless conflict with a state policy that inevitably result from federal judicial intrusions into areas of core state prerogative.

*Johnson v. Collins Ent. Co.*, 199 F.3d 710, 719 (4th Cir. 1999) (citations omitted). *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996).

The Supreme Court has applied a two-part test in determining whether *Burford* abstention is appropriate.

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 814). In the Fourth Circuit, for *Burford* abstention to be appropriate there must be a "complex state regulatory scheme…for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded." *Browning-Ferris, Inc. v. Baltimore Cty., Md.*, 774 F.2d 77, 79 (4th Cir. 1985), quoted by *Meredith*, 828 F.2d at 232. The Defendant has identified no complex areas of state law that are implicated by the claims in this action. No

11

complex state regulatory scheme is alleged to be involved. Accordingly, *Burford* abstention is not appropriate.

"*Pullman* abstention is appropriate where the case may be disposed of by a decision on questions of unsettled state law." *Meredith*, 828 F.2d at 232. In *Meredith*, 828 F.2d 228, the undecided issue of state law related to a newly enacted statute, which had not been previously interpreted by Maryland trial or appellate courts, and the construction of the statute by a trial court could moot constitutional arguments. *Id. Pullman* itself dealt with an order of the Texas Railroad Commission that was allegedly "unauthorized by Texas law as well as violative of the Equal Protection, the Due Process and the Commerce Clauses of the Constitution." *Railroad Commission of Tex.*, 312 U.S. at 498. Recognizing that "the last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the supreme court of Texas" and that the complaint asked a federal court "to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication" the Supreme Court concluded it was best for the federal courts to abstain rendering any decisions on the issues in dispute until the state courts had an opportunity to do so. *Railroad Commission of Tex.*, 312 U.S. at 499–500. Of critical import was that the resolution of issues of state law could make decision of constitutional issues unnecessary. *Id.* at 501. Here there are no issues of state law that implicate constitutional questions. Thus, *Pullman* abstention does not apply.

"In *Colorado River*, the Supreme Court held that a federal court may abstain from deciding non-frivolous nondeclaratory claims in favor of a parallel state suit for reasons of 'wise judicial administration'—but only in 'exceptional circumstances." *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015), *as amended* (Apr. 17, 2015), *as amended* (Apr. 17, 2015) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 818). "[T]he circumstances permitting the

12

4831-3025-3542 v.1 038779/02264

dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention" under other abstention doctrines. *Colorado River Water Conservation Dist.*, 424 U.S. at 817.

*Colorado River* set forth a non-exhaustive list of factors to be considered when determining whether a federal court should abstain due to the pendency of a parallel state suit. "It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts…In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums. *Colorado River Water Conservation Dist.*, 424 U.S. at 818–19 (citations omitted).

The Virginia Action did not, and still does not, name Fay as a party even though Fay submitted the claim that is the subject of this case. Fay is in possession of the key evidence related to the claim, communicated with National General about the claim, and is delegated authority to manage the claim. (Compl. at ¶ 10.) Meanwhile, all of the employees who communicated with Fay about the claim are located in Winston-Salem, NC. As noted above, these individuals could not be compelled to testify in Virginia. The location of key witnesses and evidence and the presence of a key party in this action all weigh heavily in favor of this action moving forward in this forum. Meanwhile, Integon commenced the Virginia Action against the wrong party even though the public record reflected the proper holder of the Singh loan and Integon has never included Fay as a party to the Virginia Action.

13

4831-3025-3542 v.1 038779/02264

Case 1:21-cv-00207-TDS-JEP Document 8 Filed 04/27/21 Page 13 of 16

## CONCLUSION

For the reasons shown above, Plaintiffs pray that the Defendant's Motion to Dismiss or, Alternatively, to Stay be denied.

This the 27th day of April 2021.

/s/ Donald R. Pocock
Donald R. Pocock, NC Bar No. 29393
Attorneys for Plaintiffs
NELSON MULLINS RILEY & SCARBOROUGH LLP
380 Knollwood Street, Suite 530
Winston-Salem, NC 27103
Phone: 336.774.3324 / Fax: 336.774.3376
E-mail: donald.pocock@nelsonmullins.com

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3**

Pursuant to Local Rule 7.3(d), the undersigned certifies that, according to the word count feature in Microsoft Word, the foregoing brief—excluding the case caption and certificates of counsel—contains no more than 6,250 words.

This the 27th day of April 2021.

           /s/ Donald R. Pocock
           Donald R. Pocock, NC Bar No. 29393
           Attorneys for Plaintiffs
           NELSON MULLINS RILEY & SCARBOROUGH LLP
           380 Knollwood Street, Suite 530
           Winston-Salem, NC 27103
           Phone: 336.774.3324 / Fax: 336.774.3376
           E-mail: donald.pocock@nelsonmullins.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notification of such to the following:

> John T. Jeffries
> Jeffrey B. Kuykendal
> McAngus Goudelock & Courie, PLLC
> jjeffries@mgclaw.com
> jeffrey.kukyendal@mcglaw.com

And I hereby certify that I have mailed the foregoing to the following non-CM/ECF participants:

None.

> /s/ Donald R. Pocock
> Donald R. Pocock, NC Bar No. 29393
> Attorneys for Plaintiffs
> NELSON MULLINS RILEY & SCARBOROUGH LLP
> 380 Knollwood Street, Suite 530
> Winston-Salem, NC 27103
> Phone: 336.774.3324 / Fax: 336.774.3376
> E-mail: donald.pocock@nelsonmullins.com