IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILMINGTON TRUST, NATIONAL )
ASSOCIATION, et al.,           )
                               )
          Plaintiffs,          )
                               )
     v.                        )     1:21cv207
                               )
NATIONAL GENERAL INSURANCE     )
COMPANY,                       )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a dispute over insurance coverage for damage resulting from a fire at a residence located in Great Falls, Virginia. Before the court is the motion to dismiss or, alternatively, to stay by Defendant National General Insurance Company ("National General"). (Doc. 6.) Plaintiffs Wilmington Trust, National Association[1] ("Wilmington Trust"), and Fay Servicing, LCC ("Fay Servicing") have responded, opposing the motion (Doc. 8), and National General has replied (Doc. 9). For the reasons set forth below, National General's motion to dismiss or stay will be denied.

## I.    BACKGROUND

The allegations in the complaint, taken in the light most favorable to Plaintiffs, show the following:

---

[1] Wilmington Trust brings this action solely as trustee for MFRA Trust 2014-2.

On March 18, 2008, Palwinder Singh obtained a mortgage with Bank of America, N.A. for the original principal amount of $842,080.00 by means of a promissory note ("Note"). (Doc. 1 ¶ 6.) As security for the Note, Singh conveyed a deed of trust for real property located at 817 Walker Road, Great Falls, Virginia ("Property"). (Id. ¶ 7.) The deed of trust required Singh to obtain property insurance "against loss by fire, hazards included within the term 'extended coverage,' and any other hazards including, but not limited to, earthquakes and floods" and required that all policies "shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee." (Id. ¶ 8.)

On November 29, 2017, the Note was assigned to Wilmington Trust. (Id. ¶ 9.) Fay Servicing is the servicer for the loan. (Id. ¶ 10.) In its capacity as loan servicer, Fay Servicing has the authority to take actions with regard to the debt owed by Singh, including making claims for insurance proceeds. (Id.)

On January 3, 2018, Singh obtained an insurance policy ("Policy") from National General insuring the Property against loss.[2] (Id. ¶ 12.) The Policy contains a mortgage clause which reads, in relevant part: "If a mortgagee is named in this policy,

_____

[2] The complaint does not mention the date Singh obtained the insurance policy, but both parties state it was January 3, 2018, which the court accepts for present purposes.

2

any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear."[3] (Doc. 7-1 at 34.) "Bank of America Fay Servicing" is listed on the Policy as the mortgagee. (<u>Id.</u> at 11.) The mortgage clause also states that the insurer can deny the insured's claim and "that denial will not apply to a valid claim of the mortgagee" if the mortgagee takes certain required actions. (<u>Id.</u> at 34.) The clause also contains sections requiring the insurer to notify the mortgagee if it decides to cancel or not renew the Policy.[4] (<u>Id.</u> at 36.)

Fay Servicing and Wilmington Trust allege that they were intended third-party beneficiaries of the Policy. (Doc. 1 ¶ 13.) In servicing the loan, Fay Servicing managed an escrow account on behalf of Singh through which all premiums for the Policy were timely and fully paid to National General. (<u>Id.</u> ¶¶ 14-15.)

On May 12, 2020, the Property was damaged by fire. (<u>Id.</u> ¶ 16.) Fay Servicing, in its role as loan servicer on behalf of Wilmington Trust, timely submitted an insurance claim for coverage to National General. (<u>Id.</u> ¶ 18.) National General failed to timely respond, and between June and December 2020 it failed to

---

[3] Coverages A and B concern the "dwelling" and "other structures." The Policy also contained coverages for personal property, loss of use, and liability. (<u>Id.</u> at 10.)

[4] For reasons given in Part II.A, it is unclear to what extent the court can consider the Policy, which is provided by National General in its motion to dismiss, at this juncture. However, Plaintiffs cite to select portions of the Policy in arguing against National General's motion (Doc. 8 at 7-8), so the court will do likewise.

provide any response to the claim. (Id. ¶ 19.) Then, without prior warning, National General cancelled the Policy and refused to pay the claim. (Id. ¶ 20.) National General allegedly cancelled the Policy because of misrepresentations by Singh in connection with his application for the Policy. (Id. ¶ 27.) According to Plaintiffs, neither Wilmington Trust nor Fay Servicing assisted Singh in applying for the Policy or had any knowledge of any alleged misrepresentations. (Id. ¶ 28.)

On January 12, 2021, Integon National Insurance Company ("Integon") -- a company affiliated with National General[5] -- filed a declaratory judgment action in Virginia state court seeking a declaration that the Policy is void *ab initio* due to Singh's misrepresentations, that Wilmington Trust did not comply with certain requirements in the Policy's mortgage clause, and that Integon accordingly does not owe coverage to either Singh or Wilmington Trust. (Doc. 7-3.) The original complaint named as defendants Singh and Bank of America. Integon subsequently amended the complaint to dismiss Bank of America and add Wilmington Trust as a defendant. (Docs. 7-1; 7-6.)

On March 15, 2021, Wilmington Trust and Fay Servicing filed

_____

[5] In its briefing, National General argues that National General and Integon are separate companies, and that Integon issued the Policy to Singh. (Doc. 7 at 6.) It appears that both companies operate under the brand name of "National General" or "National General Insurance." (See Doc. 7-2.) This issue is dealt with more fully in Part II.A. Because Plaintiffs allege it was National General that issued the Policy, for the sake of simplicity the court will do the same in this opinion.

the present complaint in this court against National General. (Doc. 1.) In it, they allege breach of contract, negligence, and negligent misrepresentation based on National General's refusal to pay the insurance claim. National General moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), 12(b)(7), and 19 and the doctrines of *forum non conveniens* and abstention or, in the alternative, to stay the action. (Doc. 6.) The matter is fully briefed and ready for decision.

## II. ANALYSIS

### A. Failure to State a Claim

National General first moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have named the wrong insurer. (Doc. 7 at 6.) Specifically, National General argues, "Plaintiffs fail to state a claim upon which relief can be granted against National General as Integon, and not National General, issued and renewed" the Policy. (Id.) Plaintiffs oppose the motion, arguing that National General's use of a brand name by multiple affiliated companies should not result in dismissal at this point. (Doc. 8 at 4-7.)

A motion to dismiss under Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943,

952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

In this case, both parties have attached exhibits in support of their positions.  Specifically, National General has attached a declaration of Jeffrey Weissmann, the general counsel for both National General Management Corporation ("NGMC") and National General Holdings Corporation ("NGHC"), and the amended complaint in the Virginia state court action that purportedly includes the Policy at issue.  (Docs. 7-1; 7-2.)  Plaintiffs attach emails and public records concerning the registered business names in Virginia of National General and Integon.  (Docs. 8-3; 8-4; 8-5.)

However, because National General is moving for dismissal on this basis under Rule 12(b)(6), the court is constrained in what it can consider without converting the motion to one for summary judgment.  Because a motion to dismiss "tests the sufficiency of a complaint," see Martin, 980 F.2 at 952, the court is "generally

limited to a review of the allegations of the complaint itself," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). A court can also consider documents explicitly incorporated into the complaint by reference or attached as exhibits, as well as documents submitted by the party moving for dismissal but only if the document was integral to the complaint and there is no dispute about its authenticity. See id. at 166.

Here, the court might ordinarily be able to consider the Policy attached by National General, because it forms the basis of Plaintiffs' claims and is explicitly referenced in the complaint. However, Plaintiffs appear to dispute its authenticity. (See Doc. 8 at 5 ("As noted in the Complaint, neither the Trust nor Fay were ever provided a copy of the policy obtained by Singh. As such, they cannot even verify that the copy of the policy attached to the Defendant's motion to dismiss is or is not the actual policy.").) In the average case, this might be a hard claim for the court to accept, as a plaintiff suing for breach of contract surely must identify the contract it claims was breached. But here Wilmington Trust alleges it was a third-party beneficiary of Fay's contract with National General, and it is plausible that Wilmington Trust was not provided a copy of the actual policy. Because the authenticity of the Policy is disputed, the court will therefore not consider it at this juncture. Nor can the court consider the parties' dueling exhibits, such as emails and

declarations, at this stage, especially given the disputed facts contained therein. Cf. Gibbons v. Bank of Am. Corp., No. CV JFM 08-3511, 2009 WL 10727185, at *4 (D. Md. Apr. 22, 2009) (considering defendant's declaration at the motion to dismiss stage but only when the declaration "does not contradict any facts alleged in the Amended Complaint") (citing Wilson-Cook Med., Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir. 1991)).

National General's sole argument on Rule 12(b)(6) grounds is that Plaintiffs named the wrong party. Plaintiffs have otherwise stated a plausible claim for relief as to each count, accepting as true the allegations in the complaint as the court must at this point. The court is constrained, therefore, to deny National General's motion to dismiss for failure to state a claim at this time. The court can reconsider this argument at a later date with a more developed record as to the proper defendant, as well as any motion to amend the complaint, if appropriate.[6] See Dukes v.

---

[6] In his declaration, Weissmann avers that "National General" and "National General Insurance" are "not actual companies" but in fact "are brand names that are used by all of the separate wholly owned subsidiaries under the NGMC and NGHC umbrellas." (Doc. 7-2 ¶ 6.) In other words, that National General Insurance Company and Integon National Insurance Company are separate entities both doing business under the banner of "National General" or "National General Insurance." It is unclear at this point who issued the Policy. Weissmann says it was Integon (id. ¶ 5), Integon is the plaintiff in the Virginia state case seeking rescission of the Policy, and the first page of the Policy says it was underwritten by Integon (Doc. 7-1 at 9). However, a logo for National General appears on that same first page, and the Policy further reads "PROGRESSIVE SPECIALTY INSURANCE AGENCY INC. and National General Insurance are pleased to present you with your homeowners new business

<u>Newton Conover City Sch.</u>, No. 5:13-CV-001-DCK, 2013 WL 549388, at
*2 (W.D.N.C. Feb. 12, 2013).

**B.   Failure to Join a Required Party**

National General next moves to dismiss pursuant to Rule
12(b)(7) and Rule 19 of the Federal Rules of Civil Procedure,
arguing that Plaintiffs have failed to add a required party,
Palwinder Singh.  (Doc. 7 at 6-9.)  Plaintiffs contend that Singh
is not a necessary party to this action.  (Doc. 8 at 7-9.)

Rule 12(b)(7) permits a court to dismiss an action for
"failure to join a party under Rule 19," which governs the required
joinder of parties.  Fed. R. Civ. P. 12(b)(7).  Rule 19 sets forth
a two-part inquiry for determining whether a court must dismiss an
action for failure to join an indispensable party.  <u>Pettiford v.
City of Greensboro</u>, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008).
First, a court must determine whether the person is "required"
(i.e., "necessary") under Rule 19(a).  <u>Nat'l Union Fire Ins. Co.
v. Rite Aid of S.C.</u>, 210 F.3d 246, 249 (4th Cir. 2000).  If the
absent person is a required party, the court must order his joinder
and the action may continue.  <u>Pettiford</u>, 556 F. Supp. 2d at 517.
Second, if joinder is required but is not feasible -- for example,

---

insurance policy."  (<u>Id.</u>)  The court will await further development on
this issue.  <u>See</u> <u>Davis v. Wells Fargo</u>, 824 F.3d 333, 351 (3d Cir. 2016)
(rejecting defendant's argument on 12(b)(6) review that plaintiff named
the wrong party in part when an integral document attached to the
complaint contained letterhead that bore defendant's name).  The court
also expresses no view on whether an amended complaint is necessary.

if joinder would destroy a court's diversity jurisdiction -- the court must determine whether the person is "indispensable" under Rule 19(b) such that the action must be dismissed.[7]  <u>Nat'l Union</u>, 210 F.3d at 249.  Dismissal of a case "should be employed only sparingly."  <u>Teamsters Loc. Union No. 171 v. Keal Driveaway Co.</u>, 173 F.3d 915, 918 (4th Cir. 1999).  A decision to dismiss must be made "pragmatically," with the court "examin[ing] the facts of the particular controversy to determine the potential for prejudice to all parties, including those not before it."  <u>Id.</u>  The burden of proof is on the moving party to demonstrate that the absent person must be joined to facilitate a just adjudication.  <u>Pettiford</u>, 556 F. Supp. 2d at 517.

The first inquiry is whether Singh is a required party to this action under Rule 19(a).  Rule 19(a) requires joinder when

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

---

[7] Rule 19(a) speaks about a "required party," although courts use the words "required" and "necessary" interchangeably.  Rule 19(b) was restyled in the 2007 amendments to the Federal Rules of Civil Procedure to eliminate the word "indispensable."  <u>See</u> Fed. R. Civ. P. 19 advisory committee note to the 2007 amendment ("'Indispensable' was used only to express a conclusion reached by applying the tests of Rule 19(b).  It has been discarded as redundant.").  Thus, "Rule 19(a) embraces all those persons who should be joined, including those whose joinder is not feasible and who ultimately may be regarded as indispensable under Rule 19(b)."  Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1604 (3d ed.).

> (ii) leave an existing party subject to a substantial
> risk of incurring double, multiple, or otherwise
> inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Wilmington Trust and Fay Servicing argue that Singh is not a required party because "Fay's claim does not extend to any of Singh's personal property . . . or to Singh's equity in the Property. Under the terms of the policy, Singh has no right to any insurance proceeds up to the amount of the mortgage debt. Accordingly, Fay's claim can be resolved without Singh's presence in this action." (Doc. 8 at 8.) In essence, Plaintiffs argue that the Policy's mortgage clause creates a separate contract between Plaintiffs and National General such that the court can resolve Plaintiffs' claims without Singh's presence. On the record before it, this claim appears plausible.

The mortgage clause reads, in part: "If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear." (Doc. 7-1 at 34.) The clause further states that the insurer can deny the insured's claim, and "that denial will not apply to a valid claim of the mortgagee" if the mortgagee takes certain required actions. (Id.) The clause also contains sections requiring the insurer to notify the mortgagee if it decides to cancel or not renew the Policy. (Id. at 36.)

In general, there are two types of mortgage clauses. See 4

Couch on Ins. §§ 65:8-65.9 (3d ed.) (distinguishing the "simple" from the "standard" mortgage clause). The "simple" mortgage clause merely provides that the proceeds of the policy will be paid first to the mortgagee to the extent of his or her interest. "The generally accepted view is that under a simple or open clause, the rights of the lienholder are wholly derivative, and cannot exceed those of the insured . . . [T]he mortgagee stands in the shoes of the insured, enjoying the same rights as the insured, no more, no less; if coverage is defeated due to an act of the insured, the mortgagee likewise would be denied recovery." 46A C.J.S. Insurance § 1954 (Mar. 2021 update).

In contrast, the "union" or "standard" mortgage clause, in addition to providing that the proceeds of the policy will be paid to the extent of the mortgagee's interest, further protects the mortgagee against loss from any act or neglect of the mortgagor. When an insurance policy has a standard mortgage clause, "the mortgagee has an independent contract with the insurer that cannot be defeated by improper or negligent acts of the mortgagor." 4 Couch on Ins. § 65:32. Thus, in a common scenario, the insured's act of arson would not preclude a lienholder from recovering from the insurer under a standard mortgage clause. See, e.g., Nationwide Mut. Ins. Co. v. Dempsey, 495 S.E.2d 914 (N.C. App. 1998).

Often, the standard mortgage clause contains express language

12

to the effect that the mortgagee or lienholder's interest "shall not be invalidated by any act or neglect" of the mortgagor. See, e.g., Foremost Ins. Co. v. Allstate Ins. Co., 486 N.W.2d 600, 602 (Mich. 1992). Virginia courts have upheld the use of standard mortgage clauses containing similar language for upwards of 100 years. See Nat'l Bank of Fredericksburg v. Virginia Farm Bureau Fire & Cas. Ins. Co., 606 S.E.2d 832, 833 (Va. 2005) ("The clause stated, in pertinent part, that 'this insurance as to the interest of the . . . Lienholder shall not be invalidated by any act or neglect of the [Owner].'"); New Brunswick Fire Ins. Co. of New Brunswick, N.J., v. Morris Plan Bank of Portsmouth, Va., 118 S.E. 236, 237–38 (Va. 1923).

There is no such express language in the Policy. However, the Policy's mortgage clause does state that, "If we deny [the insured's] claim, that denial will not apply to a valid claim of the mortgagee" if certain conditions are met. (Doc. 7-1 at 34.)

Plaintiffs have not pointed to any case law or other authority on the type of mortgage clause present here, given this language, and what effect that might have on the present case. It is not the court's obligation to conduct the parties' research, see United States v. Johnson, 122 F. Supp. 3d 272, 346 (M.D.N.C. 2015), but the court should avoid being led to a potentially erroneous legal determination based on such failure. Consequently, the court conducted its own independent research, which reveals that state

courts construing substantially identical language have deemed it to be a standard mortgage clause. Further, such courts have held that, as a result, the insured's misrepresentations in the insurance application do not void a valid claim by the mortgagee. See, e.g., Norwest Mortg., Inc. v. Nationwide Mut. Fire Ins. Co., 718 So. 2d 15, 17 (Ala. 1998) (holding that an identical clause was a "'standard' mortgage clause, which, under Alabama law, constitutes a separate contract between a mortgagee and an insurer that is not voided . . . by an insured's misrepresentations in an insurance application."); Nationwide Mut. Ins. Co. v. Hunt, 488 S.E.2d 339, 343 (S.C. 1997).

Norwest Mortgage is instructive. The facts in that case are substantially similar to those alleged in the present case. There, the homeowners allegedly made misrepresentations in the insurance application, the insurance company issued the policy, the bank mortgagee was named in the policy, and the house was eventually destroyed by fire. 718 So.2d at 16. While investigating the claim, the insurance company discovered the misrepresentations, refused coverage, and filed a declaratory judgment action in Alabama state court seeking to void the policy. Id. The Alabama Supreme Court, construing a mortgage clause virtually identical to the one at issue here, held that it was a standard mortgage clause that created a separate contract between the insurance company and the mortgagee -- "a contract that was not subject to the nullifying

14

effects" of Alabama's statute prohibiting material misrepresentations in an insurance application. Id. at 17.

This reasoning is sufficiently persuasive at this point to deny National General's motion on this ground.[8] If this line of authority is correct, contrary to National General's contention (Doc. 7 at 7) the court would not need to resolve the "threshold issue" of whether Singh made material misrepresentations in his insurance application. While such a determination might affect Singh's own insurance claim, it may have no bearing on Plaintiffs' claim for coverage assuming a standard mortgage clause that creates a separate contract between Plaintiffs and National General that cannot be voided by Singh's alleged bad acts. This action can therefore proceed without Singh because he would not be a necessary party. For these reasons, the court will deny National General's motion under Rule 12(b)(7) at this time.[9]

---

[8] In addition, the mortgage clause in the Policy contains a requirement that the insurer not cancel the policy without giving notice to the mortgagee, which "effects a contract of insurance directly with the [mortgagee], and is, in effect, a [standard] mortgage clause." See 4 Couch on Ins. § 65:10.

[9] Because this argument was not sufficiently developed to address the case law the court discovered, the denial is without prejudice to National General raising it later in an appropriate context. National General has also made a passing reference to Rule 12(b)(2), arguing that the addition of Singh would "render venue inappropriate as there is no indication that the Middle District of North Carolina has personal jurisdiction over Singh." (Doc. 7 at 9 n.2.) Because the court has found that Singh is not a necessary party, it need not consider this argument and will deny the motion on this point as moot.

## C. Improper Venue and *Forum Non Conveniens*

National General next moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that the Middle District of North Carolina is an improper venue.  In the alternative, National General argues that even if venue is appropriate in this district, the case should be dismissed under the doctrine of *forum non conveniens*.  (Doc. 7 at 9-11.)  Plaintiffs oppose both grounds for dismissal.  (Doc. 8 at 9-10.)

"When an objection to venue has been raised under Rule 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action." Turfworthy, LLC v. Dr. Karl Wetekam & Co. KG, 26 F. Supp. 3d 496, 502 (M.D.N.C. 2014) (quotations omitted).  Absent an evidentiary hearing, a plaintiff need only make a *prima facie* showing that venue is proper. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).  In making a venue determination, the court can consider evidence outside the pleadings and should view the facts in the light most favorable to the plaintiff. Turfworthy, 26 F. Supp. 3d at 502.

In opposing venue in this district, National General repeats the arguments it made under Rules 12(b)(6) and 12(b)(7) -- that it is not a proper defendant and so venue in this district is improper and that the addition of Singh as a necessary party would render venue here inappropriate.  However, for reasons previously

16

discussed, the court is not persuaded to grant National General's motion to dismiss on either ground at this time. Further, as Plaintiffs argue, "There is no dispute that National General's headquarters are located in Winston-Salem" in this district. (Doc. 8 at 9.) Under 28 U.S.C. § 1391(b)(1), venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."[10] A corporate defendant is a resident "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c). A corporation is subject to the court's personal jurisdiction, in part, in the location of its "principal place of business" where its officers "direct, control, and coordinate the corporation's activities." Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010). National General's principal office address and the location of several of its high-ranking officers is in Winston-

_____

[10] In full, § 1391(b) provides:

A civil action may be brought in -

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Salem, North Carolina, in this district. (Doc. 8-4.) On the current record, and with National General offering no other ground that venue is inappropriate, the court finds that venue is proper in this district. The court will therefore deny National General's motion to dismiss pursuant to Rule 12(b)(3).[11]

The doctrine of *forum non conveniens* grants the district court discretion to dismiss a case in certain circumstances. S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 610 (M.D.N.C. 1997). Specifically, "[a] *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." Jiali Tang v. Synutra Int'l, Inc., 656 F.3d 242, 246 (4th Cir. 2011). Before dismissing for *forum non conveniens*, "[a] district court must determine whether the alternative forum is: 1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." Id. at 248. *Forum non conveniens* "is a common law doctrine now largely limited in federal court to cases where the alternative forum for litigating the dispute is outside of the United States." Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV, 569 F.3d 189, 200 (4th Cir. 2009) (citing

---

[11] Plaintiffs also argue that venue would likewise be proper as to Integon, which also has its principal place of business in this district. (Docs. 8 at 9; 8-3.)

<u>Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 435-36 (2007)).

Plaintiffs do not address the specific prongs of a *forum non conveniens* inquiry. Nevertheless, there does not appear to be any dispute that there is an available and adequate alternative forum in the Virginia state court in which Integon's declaratory judgment action is currently pending.[12] Rather, Plaintiffs' opposition focuses, albeit in a cursory fashion, on the public and private interest factors. (Doc. 8 at 10.) These factors include the following:

> (1) the ease of access to sources of proof; (2) the availability of compulsory process for securing the attendance of unwilling witnesses; (3) the costs of obtaining the attendance of witnesses; (4) the ability to view premises; (5) the general facility and cost of trying the case in the selected forum; and (6) the public interest, including administrative difficulties, the local interest of having localized controversies decided at home, and the interest of trying cases where the substantive law applies.

---

[12] National General also argues that the Eastern District of Virginia would be an adequate alternative venue. (Doc. 7 at 10.) However, National General has sought dismissal on the basis of *forum non conveniens* in the alternative, only if this court finds venue in the Middle District of North Carolina to be proper. (<u>See</u> <u>id.</u>) The court notes that National General has not moved to transfer venue under 28 U.S.C. § 1404(a) in such a situation. Typically *forum non conveniens*, as opposed to § 1404(a), "applies only when the superior forum is in a foreign country or perhaps, under rare circumstances, a state court or a territorial court." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed.). In other words, to the extent that National General is arguing that, were this court to find venue proper in this district, the court should nevertheless dismiss in favor of another <u>federal</u> court, the more appropriate request would be a motion to <u>transfer</u> under § 1404(a). National General did not make that motion, so this court considers the argument for *forum non conveniens* only as it relates to the Virginia state court.

Compania Naviera, 569 F.3d at 200. Considering all the relevant factors, the court cannot say that they "strongly favor" the Virginia state court as a more convenient forum.

As to the first three factors, the sources of proof are mostly documents, such as the Policy, and witness testimony. The documents can be viewed in either forum, and Plaintiffs allege that key witnesses are located here in North Carolina where National General is headquartered and that such witnesses could not be compelled to testify in Virginia by means of a Virginia state court subpoena. (Doc. 8 at 10.) Both Wilmington Trust and Fay Servicing are located outside both Virginia and North Carolina, so it does not appear that one forum would be any more convenient or costly for Plaintiffs. In any event, Plaintiffs have chosen to sue in this district and their choice is "ordinarily given significant deference." Jacobs Vehicle Sys., Inc. v. Yang, No. 1:12CV00181, 2013 WL 4833058, at *5 (M.D.N.C. Sept. 10, 2013) (citations omitted).

It is unclear if a premises view -- the fourth factor -- is relevant in this case. If so, that would weigh in favor of Virginia since the Property is located in Virginia. Nor has any party articulated any cost analysis -- the fifth factor. It appears the case would be slightly less costly to try in the present forum, since Plaintiffs are not located in either North Carolina or Virginia, but Defendant National General is located in North

Carolina.  Finally, the public interest factors do not weigh heavily in favor of Virginia.  There do not appear to be any administrative difficulties in trying the case in North Carolina. While the Virginia state action was filed first, it was filed only about two months prior to this action, and there is no indication that significant proceedings have occurred in that court.  And while this case potentially deals with Virginia law  -- which the parties appear to assume is the case, an assumption the court need not resolve at this moment -- the legal issues concern relatively routine questions of contract and tort law, rather than complex issues of comparative law.  Cf. Jiali Tang, 656 F.3d at 252 (affirming dismissal based on *forum non conveniens* in part where "the district court would likely encounter complex issues of Chinese law").  To the extent this factor weighs in favor of dismissal, it is slight.

A court should dismiss an action under *forum non conveniens* in favor of an alternative forum only when "the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administration and legal problems."  Compania Naviera, 569 F.3d at 200 (4th Cir. 2009) (quotations and alterations omitted).  Viewed in light of all the relevant factors, the court cannot say that the chosen forum "establish[es] oppressiveness and vexation" to

National General "out of all proportion" to upset Plaintiffs' choice of forum. National General's motion to dismiss under *forum non conveniens* will therefore be denied.

### D.  Abstention

The final basis on which National General moves to dismiss is under the doctrine of abstention, which Plaintiffs oppose.[13]

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976).  Abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  Id. (citation

---

[13] National General brings this portion of its motion to dismiss pursuant to Rule 12(b)(1).  "The Fourth Circuit has not decided whether a court entertaining a *Colorado River* abstention challenge should apply a Rule 12(b)(1) or 12(b)(6) standard."  Williams v. Ests. LLC, No. 1:19-CV-1076, 2020 WL 887997, at *8 n.6 (M.D.N.C. Feb. 24, 2020).  District courts have allowed abstention challenges to be raised under both a Rule 12(b)(1) and Rule 12(b)(6) motion.  See id. (collecting cases).  Colorado River abstention sits uneasily with Rule 12(b)(1), which requires dismissal for lack of subject matter jurisdiction.  The language of that case and its progeny presuppose the court has jurisdiction, but due to "exceptional circumstances" should decline to exercise it.  See Colorado River, 424 U.S. at 813 ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.") (citation omitted, emphasis added).  And, indeed, in the context of Younger abstention, the Fourth Circuit has emphasized that "*Younger* abstention 'does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced.'"  Nivens v. Gilchrist, 444 F.3d 237, 247 n.7 (4th Cir. 2006) (quoting Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc., 477 U.S. 619, 626 (1986)).  The court need not resolve this issue here because regardless of the standard to be applied, the outcome would be the same.

omitted).  In addition to certain other limited forms of abstention

not applicable here, so-called Colorado River abstention "solely

as a matter of judicial administration[] permits dismissal of a

duplicative federal action when 'wise judicial administration,

giving regard to conservation of judicial resources and

comprehensive disposition of litigation' clearly favors

abstention."  Chase Brexton Health Servs., Inc. v. Maryland, 411

F.3d 457, 463 (4th Cir. 2005) (quoting Colorado River, 424 U.S. at

817) (alterations omitted).

The "threshold question" in deciding whether Colorado River

abstention is appropriate is whether there are parallel federal

and state proceedings.  Id. at 463.  "If parallel suits exist,

then a district court must carefully balance several factors, 'with

the balance heavily weighted in favor of the exercise of

jurisdiction.'"  Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury

Constr. Corp., 460 U.S. 1, 16 (1983)).  Although the inquiry is

not a "hard-and-fast" one in which application of a "checklist"

dictates the outcome, see id., relevant factors include:

> (1) whether the subject matter of the litigation involves
> property where the first court may assume *in rem* jurisdiction
> to the exclusion of others; (2) whether the federal forum is
> an inconvenient one; (3) the desirability of avoiding
> piecemeal litigation; (4) the relevant order in which the
> courts obtained jurisdiction and the progress achieved in
> each action; (5) whether state law or federal law provides
> the rule of decision on the merits; and (6) the adequacy of
> the state proceeding to protect the parties' rights.

Id. at 463-64.

As to the threshold question, suits are parallel "if substantially the same parties litigate substantially the same issues in different forums." New Beckley Min. Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1073 (4th Cir. 1991). This requirement has been "strictly construed." Chase Brexton, 411 F.3d at 464.

Here, given this high bar, it is doubtful whether the two suits can be considered parallel. Notably, the parties are different. Fay Servicing is a Plaintiff here, but is not named in the Virginia state court action, while Integon is the plaintiff in the Virginia state case but National General -- which, according to National General itself, is a wholly separate company -- is the Defendant here. Even in situations in which the parties are "virtually identical," suits may not be parallel if "the issues raised and remedies sought are not" also identical. See New Beckley, 946 F.2d at 1074. In the Virginia state action, Integon seeks declaratory relief, while Plaintiffs here seek monetary damages. Further, Plaintiffs seek a jury trial in this case, while in the Virginia case the decision will be left to the court. Cf. id. ("New Beckley seeks compensation in federal court and equitable relief in state court. A difference in remedies is a factor counseling denial of a motion to abstain. The difference in remedies becomes more pronounced when one suit requires a jury and the other does not.") (citation omitted).

Even if the proceedings were parallel, a review of the relevant factors, with the balance "heavily weighted" in favor of exercising jurisdiction, would lead this court not to abstain. See Moses H. Cone, 460 U.S. at 16. The first factor, whether the litigation involves *in rem* jurisdiction, is not applicable. The second factor, whether the federal forum is inconvenient, does not provide any support for abstention. National General is located in this district, and Plaintiffs are not located in either Virginia or North Carolina, so this district is no more or less convenient than Virginia.

The third factor is the desirability of avoiding piecemeal litigation. Importantly, however, the "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Chase Brexton, 411 F.3d at 465 (citation omitted). Indeed, the "general rule [is] that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." Id. at 462. The desire to avoid piecemeal litigation in the abstention context requires something beyond mere concurrent proceedings. For example, in Colorado River itself, the Supreme Court was dealing with a federal statute that evinced a "clear federal policy" in the "avoidance of piecemeal adjudication of water rights in a river system" and a firm belief that the allocation of water rights is "best conducted in unified

proceedings." Colorado River, 424 U.S. at 819. There is no such statute or policy in this case. Rather, the piecemeal litigation National General fears is that which is inherent in any concurrent proceeding in our federal system. This is not enough to merit abstention.

The fourth factor is the order in which each court obtained jurisdiction and the progress in each action. "Priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." Moses H. Cone, 460 U.S. at 21. Here, while the Virginia action was filed first, it was filed only two months prior to this federal case. The court has no indication how far proceedings have advanced in that case, either. To the extent this factor weighs in favor of abstention, it is slight. See New Beckley, 946 F.2d at 1074 (noting that the order in which the two courts obtained jurisdiction "matters little" when the cases were filed nine months apart).

The final two factors -- whether state or federal law provides the rule of decision and the adequacy of the state proceeding to protect the parties' rights -- weigh in favor of abstention. Even assuming, as do the parties (see Doc. 7 at 16), that this case involves Virginia law, the questions presented are fairly routine issues of contract or tort law. There is also no allegation that the Virginia state court is unable to protect the parties' rights.

District courts have a "virtually unflagging obligation" to "exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. This court's task "is not to find some substantial reason for the *exercise* of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications' . . . to justify the *surrender* of that jurisdiction." *Bell v. Am. Int'l Indus.*, No. 1:17CV111, 2020 WL 6546234, at *6 (M.D.N.C. Nov. 6, 2020) (quoting *Moses H. Cone*, 460 U.S. at 25-26). Mindful of this obligation, and having weighed all the relevant factors, the court will deny National General's motion to dismiss on grounds of abstention.

### E. Discretionary Stay

In the alternative, National General argues that the court should stay this action pending the resolution of the Virginia state court action. (Doc. 7 at 15-17.) It argues that "while a stay under the abstention doctrine as laid out in *Colorado River* would be appropriate, National General contends the proper analysis of the motion to stay is under the Landis Doctrine." (Id. at 14-15.) Plaintiffs do not appear to respond to National General's argument for application of the Landis doctrine.

When considering whether to stay a federal proceeding during the pendency of a similar state court action, the Fourth Circuit has used both the Landis doctrine and the Colorado River doctrine. *Bell*, 2020 WL 6546234, at *8 (citations omitted). For reasons

discussed above, this court has already concluded that National General's motion cannot meet the high bar for <u>Colorado River</u> abstention.

In <u>Landis</u>, the Supreme Court held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." <u>Landis v. N. Am. Co.</u>, 299 U.S. 248, 254 (1936). The Fourth Circuit has admonished that, while the power to grant a discretionary stay pending parallel proceedings under <u>Landis</u> is "well recognized," it is not "without limitation." <u>Williford v. Armstrong World Indus., Inc.</u>, 715 F.2d 124, 127 (4th Cir. 1983). "[P]roper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance. The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." <u>Id.</u> (quotations omitted). In deciding whether to grant a stay, the court weighs "the interests of judicial economy, the potential prejudice to the non-moving party in the event of a stay, and the hardship and inequity to the moving party in the absence of a stay." <u>Bell</u>, 2020 WL 6546234, at *9.

Here, the first factor, judicial economy, weighs in favor of a stay. There are two separate cases involving similar parties and issues proceeding simultaneously. This is an inefficient use

of judicial resources. See id. ("When overlapping suits are filed in separate courts, stays . . . are the best means of coordination.") (quoting Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 839 (7th Cir. 1999)).

The second factor is the potential prejudice to the non-moving party if the case is stayed. Because Plaintiffs did not respond to this portion of National General's motion, they did not specifically address how they might be prejudiced if this case were stayed. In addressing National General's abstention argument, however, Plaintiffs note that, "The Virginia Action [does not] name Fay as a party even though Fay submitted the claim that is the subject of this case. Fay is in possession of the key evidence related to the claim, communicated with National General about the claim, and is delegated authority to manage the claim. Meanwhile, all of the employees who communicated with Fay about the claim are located in Winston-Salem . . . [T]hese individuals could not be compelled to testify in Virginia. The location of key witnesses and evidence and the presence of a key party in this action all weigh heavily in favor of this action moving forward in this forum." (Doc. 8 at 13.)

Further, according to the complaint, Fay Servicing submitted an insurance claim to National General in May 2020, to which National General did not respond for approximately eight months before filing the declaratory judgment action in Virginia court in

January 2021.  (Doc. 1 ¶¶ 16-19.)  In other words, Plaintiffs allege they are entitled to insurance proceeds that have been unjustifiably withheld for over a year.  Again, it is unclear how advanced the Virginia state court action is, which makes it difficult to ascertain whether any further delay in this court is likely to be prejudicial to Plaintiffs.  Nevertheless, given the different parties and claims in this action and the length of time Plaintiffs have waited for a resolution of their insurance claim, this factor weighs in favor of allowing this case to proceed.

The final factor is hardship to the moving party in the absence of a stay.  National General argues that it will be burdened by having to participate in similar litigation in two different forums, including duplication of discovery and the risk of inconsistent verdicts.  (Doc. 7 at 16.)  However, <u>Landis</u> instructs that the party moving for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else."  <u>Landis</u>, 299 U.S. at 255.  National General has not met this standard here.  While there is a risk of duplication, such risk is inherent in our dual system that permits cases to be filed in both federal and state courts.  As to the threat of inconsistent verdicts, National General has not clarified what that inconsistency is likely to be and why traditional rules of preclusion, such as res judicata and

collateral estoppel, would not guard against such a risk. Accordingly, National General has not made a "clear case of hardship or inequity" to warrant a stay in this case.  Id.

The court will therefore deny National General's request for a stay.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant National General Insurance Company's motion to dismiss or, in the alternate, to stay (Doc. 6) is DENIED.

/s/    Thomas D. Schroeder
United States District Judge

June 17, 2021